## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

|  |  |
|---|---|
| IN THE MATTER OF THE SEARCH OF THIRTY-EIGHT (38) LYCA MOBILE SIM CARDS, ONE (1) BLACK AND SILVER THUMB DRIVE, ONE (1) GOLD DTGE9 THUMB DRIVE, ONE (1) WHITE THUMB DRIVE, AND ONE (1) SANGSIN BRAKE HI-Q THUMB DRIVE, CURRENTLY LOCATED AT THE DEA PORTLAND MAINE RESIDENT OFFICE | No. 1:24-mj-00177-JCN<br><br>**FILED UNDER SEAL** |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

### Filed Under Seal Pursuant to Local Rule 157.6(a)

I, Kristopher Sullivan, being duly sworn, depose and state as follows in support of a search warrant sought pursuant to Federal Rule of Criminal Procedure 41, Title 18, United States Code, Section 3103a, and Title 21, United States Code, Section 879:

### INTRODUCTION

1.     I am a Special Agent with the Drug Enforcement Administration ("DEA"), assigned to the Portland, Maine, Resident Office. I have been employed as a DEA Special Agent since 2013. As a DEA Special Agent, I am authorized to investigate violations of the laws of the United States, and I have been involved with numerous criminal investigations involving violations of federal law, including those involving drug trafficking and related financial crimes. In the course of my law enforcement training and experience, I have had an opportunity to search for, seize, and personally observe what I have recognized to be and what was later confirmed by drug analysis to be scheduled drugs, including but not limited to fentanyl/heroin, cocaine, marijuana (both dried and growing), crack cocaine, methamphetamine, and various narcotics

lawfully available only by prescription. I have conducted or participated in, among other things, surveillance, undercover transactions, debriefings of informants and confidential sources, and reviews of taped conversations relating to narcotics trafficking. I have assisted in a large number of other investigations. I have assisted in the execution of numerous search and arrest warrants in which controlled substances, drug paraphernalia, and other contraband were found. Through my training and experience, I have become familiar with the habits, methods, routines, practices and procedures commonly employed by persons engaged in the trafficking of illegal drugs. I am a law enforcement officer with authority to execute arrest and search warrants under the authority of the United States.

2.     I have participated in numerous arrest and seizure warrants involving a variety of offenses, including violations pertaining to drug and financial crimes investigations. I have also drafted and executed numerous warrants for residences, cellular devices, and online accounts to search for and seize physical and digital evidence. Specific to digital evidence, based on my training and experience, I am familiar with how drug trafficking enterprises and individuals associated with them utilize residences, media, and on-line accounts in furtherance of such operations, including through the use of personal home surveillance equipment.

2.     This affidavit is submitted in support of an application for a search warrant to search: (i) thirty-eight (38) Lyca Mobile SIM Cards; (ii) one (1) black and silver thumb drive; (iii) one (1) gold DTGE9 thumb drive; (iv) one (1) white thumb drive; and (v) one (1) Sangsin Brake Hi-Q thumb drive (together, the "STORAGE MEDIA"). The STORAGE MEDIA was seized by the Somerset County Sheriff's Office ("SCSO") on March 25, 2024, during the SCSO's execution of a state search warrant at 114 Upper

Main Street, in Norridgewock, Maine,[1] as described in **Attachment A** of this Affidavit.

Photographs of the STORAGE MEDIA are reproduced below:





---

[1] Because the STORAGE MEDIA was located, identified, and seized by SCSO personnel during their execution of a lawfully issued state court search warrant, the SCSO might already have all necessary authority to forensically examine the STORAGE MEDIA. I seek this additional warrant out of an abundance of caution to be certain that such an examination will comply with the Fourth Amendment and other applicable laws.









The search warrant is sought for evidence, contraband, property, and fruits and instrumentalities of violations of Title 21, United States Code, Sections 856 & 846 (Drug-Involved Premises; Conspiracy), Title 18, United States Code, Sections 1343 & 1349 (Wire Fraud; Conspiracy), and Title 18, United States Code, Sections 1956 & 1957 (Money Laundering). The applied-for warrant would authorize the forensic examination of the STORAGE MEDIA for the purpose of identifying electronically stored data more particularly described in **Attachment B**.

3.      The facts set forth in this affidavit are based on my personal knowledge, information obtained during my participation in this investigation, information from others, including law enforcement officers, my review of documents and records related to this investigation, and information gained through my training and experience, all of which I believe to be reliable. Therefore, I submit that probable cause exists to believe that evidence, contraband, property, and fruits and instrumentalities of violations of Title 21, United States Code, Sections 856 & 846 (Drug-Involved Premises; Conspiracy), Title 18, United States Code, Sections 1343 & 1349 (Wire Fraud; Conspiracy), and Title 18, United States Code, Sections 1956 & 1957 (Money Laundering) are presently located on the STORAGE MEDIA. My affidavit is intended to provide the facts necessary for a determination of probable cause for the requested search warrant.

4.      The information sought to be searched and seized concerns **the relevant time frame of January 1, 2022 through March 25, 2024**.

## **TECHNICAL TERMS**

5.     Based on my training and experience, I use the following technical terms
to convey the following meanings:

a.     IP Address: The Internet Protocol address (or simply "IP address")
is a unique numeric address used by computers on the Internet. An
IP address looks like a series of four numbers, each in the range 0-
255, separated by periods (e.g., 121.56.97.178). Every computer
attached to the Internet must be assigned an IP address so that
Internet traffic sent from and directed to that computer may be
directed properly from its source to its destination. Most Internet
service providers control a range of IP addresses. Some computers
have static—that is, long-term—IP addresses, while other
computers have dynamic—that is, frequently changed—IP
addresses.

b.     Internet: The Internet is a global network of computers and other
electronic devices that communicate with each other. Due to the
structure of the Internet, connections between devices on the
Internet often cross state and international borders, even when the
devices communicating with each other are in the same state.

c.     Storage medium: A storage medium is any physical object upon
which computer data can be recorded. Examples include thumb
drives, hard disks, RAM, floppy disks, flash memory, CD-ROMs,
and other magnetic or optical media, to include SIM cards.

      d.      SIM card: A SIM (subscriber identity module) is a small plastic card containing a silicon chip that is inserted into a device (such as a cell phone), used to identify a subscriber on a communications network, and stores data (such as phone numbers or contact information). Stored data may include user identity, location and phone number, network authorization data, personal security keys, contact lists, and stored text messages.

**COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS**

6.      As described above and in Attachment B, this application seeks permission to search for data stored within the STORAGE MEDIA. Thus, the warrant applied for would authorize the seizure of such electronic evidence or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

7.      I submit that there is probable cause exists for at least the following reasons, in addition to those further discussed below:

      a.      Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

     b.     Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.

8.     As further described in Attachment B, this application seeks permission to locate not only files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the STORAGE MEDIA was used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on the STORAGE MEDIA because:

     a.     Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files

were created and the sequence in which they were created, although this information can later be falsified.

b.    As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used.  Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, stored images may both show a particular location and

have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the user.

c.     Last, stored information may provide relevant insight into the user's state of mind as it relates to the offenses under investigation. For example, information may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

d.     A person with appropriate familiarity with how the STORAGE MEDIA works can, after examining this forensic evidence in its proper context, draw conclusions about how such media was used, the purpose of their use, who used them, and when.

e.     The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought,

computer evidence is not always data that can be merely reviewed
by a review team and passed along to investigators. Whether data
stored on a computer is evidence may depend on other information
stored on the computer and the application of knowledge about
how a computer behaves. Therefore, contextual information
necessary to understand other evidence also falls within the scope
of the warrant.

9.     The seizure of the physical storage media and later off-site review
consistent with the warrant is specifically sought to occur through the imaging process,
which involves the taking of a complete electronic picture of the STORAGE MEDIA
data, including all hidden sectors and deleted files. Imaging is necessary to ensure the
accuracy and completeness of data recorded on the storage media, and to prevent the
loss of the data either from accidental or intentional destruction.  This is true because of
the following:

a.     The time required for an examination. Analyzing evidence of how
the STORAGE MEDIA has been used, what it has been used for,
and who has used it requires considerable time. As explained above,
because the warrant calls for forensic electronic evidence, it is likely
that it will be necessary to thoroughly examine the STORAGE
MEDIA to obtain a potentially large volume of information.
Reviewing that information for things described in the warrant can
take weeks or months.

b.     Technical requirements.  The vast array of computer hardware and
software available makes it difficult to know before a search what

tools or knowledge will be required to analyze the system and its

data.  Reviewing the STORAGE MEDIA in a controlled

environment will allow its examination with the proper tools and

knowledge.

    c.    Variety of forms of electronic media.  Records sought under this

warrant could be stored in a variety of formats that may require off-

site reviewing with specialized forensic tools.

10.    Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I

am applying for would permit seizing, imaging, or otherwise copying the STORAGE

MEDIA that reasonably appears to contain some or all of the evidence described in the

warrant, and would authorize a later review of the media or information consistent with

the warrant. The later review may require techniques, including but not limited to

computer-assisted scans of the entire medium, that might expose many parts of the

STORAGE MEDIA to human inspection in order to determine whether it is evidence

described by the warrant.

## PRESENT LOCATION OF STORAGE MEDIA

11.    Following the SCSO's execution of the search warrant, I temporarily took

custody of the STORAGE MEDIA to take photographs of it. The STORAGE MEDIA is

presently stored securely in the temporary custody of the DEA at the Portland, Maine,

Resident Office.  In my training and experience, I know that the STORAGE MEDIA has

been stored in a manner in which its contents are, to the extent material to this

investigation, in substantially the same state as they were when the STORAGE MEDIA

first came into the possession of law enforcement, and that the STORAGE MEDIA is

likely able to be forensically copied and reviewed in the event that the requested search warrant for its contents is issued by this Court.

## PROBABLE CAUSE

### A.    Background of the Investigation

12.    DEA, in coordination with the Federal Bureau of Investigation ("FBI") and Homeland Security Investigations ("HSI"), is investigating individuals, entities, and premises involved in a suspected large-scale coordinated series of illegal marijuana grows in the state of Maine. The drug-involved premises at issue are believed to operate in violation of 21 U.S.C. § 856(a), in addition to illegally cultivating for distribution marijuana in violation of 21 U.S.C. § 841(a)(1). Associated individuals are suspected of conducting domestic money laundering transactions in violation of 18 U.S.C. § 1956(a)(1), sourced by and through proceeds derived from the specified unlawful activity of illegal marijuana cultivation, and relatedly, conducting monetary transactions in criminally derived property in amounts greater than $10,000 in violation of 18 U.S.C. § 1957. Related violations concerning a wire fraud scheme (18 U.S.C. § 1343) used to obtain mortgage financing to purchase many of the premises used for the illegal marijuana cultivation, as well as mortgage fraud (18 U.S.C. § 1014) and bank fraud (18 U.S.C. § 1344), are also under investigation.

11.    Among the premises suspected by federal investigators of illegal marijuana activity, the investigation identified residential properties located at Madison, 571 Thurston Hill Road, and Norridgewock, 114 Upper Main Street. I have reviewed real property records concerning the acquisition and ownership of Madison, 571 Thurston Hill Road, and Norridgewock, 114 Upper Main Street, as well at the related electrical consumption of both properties.

### 1.    Madison, 571 Thurston Hill Road, Real Estate Details

12.    The warranty deed recorded with the Somerset County Register of Deeds for Madison, 571 Thurston Hill Road, shows that on May 25, 2022, the real property at such location was granted to JIAMIN LIAO. Madison town tax records indicate that JIAMIN LIAO remains the current owner of the property.

13.    A mortgage for the property recorded with the Somerset County Register of Deeds shows that JIAMIN LIAO financed the acquisition through a mortgage granted by Hometown Equity Mortgage, LLC, of Lake Forest, California, on May 25, 2022. According to the terms of the mortgage note, JIAMIN LIAO agreed to pay Hometown Equity Mortgage, LLC the sum of $150,001, plus interest, in full by June 1, 2052. The mortgage note shows that JIAMIN LIAO's signature was made before a Maine notary public on May 25, 2022, in Franklin County, Maine.

14.    In connection with the investigation, mortgage loan records were obtained from Hometown Equity Mortgage, LLC, concerning JIAMIN LIAO's acquisition of Madison, 571 Thurston Hill Road. Such records show that JIAMIN LIAO certified to Hometown Equity Mortgage, LLC, that the loan was sought for "business purposes" regarding Madison, 571 Thurston Hill Road.[2] In the Commercial Loan Application, JIAMIN LIAO further certified that "the property will not be used for any illegal or prohibited purpose or use."

---

[2] JIAMIN LIAO also is shown by the mortgage file documentation to have signed the Purchase and Sale Agreement, ALTA Settlement Statement, and various other property disclosures and certifications concerning her acquisition of Madison, 571 Thurston Hill Road. JIAMIN LIAO also took out a homeowners insurance policy on Madison, 571 Thurston Hill Road, in May 2022.

15.     The Hometown Equity Mortgage, LLC, mortgage loan file included TD Bank statements for a checking account held in JIAMIN LIAO's name ending in -0641. According to the March 2022 account statement, there was a beginning balance of $2,845.72, followed by three cash deposits totaling $3,470 and four electronic transfers to the account using the third-party money transfer application Zelle, totaling an additional $8,899. According to the April 2022 account statement, there was a beginning balance of $14,379.57, with an ending balance of $77,062.57. In April 2022, the account received nine deposits of between $2,000 and $7,500, totaling $32,000, as well as wire transfers in the amounts of $15,000 and $17,000.

16.     The mortgage loan records further show that the above deposits and transfers were documented as "gift letters" from "relatives" of JIAMIN LIAO, showing that the "gifts" were to be applied toward the purchase of Madison, 571 Thurston Hill Road, with no expectation of repayment.

17.     The mortgage loan records further show that JIAMIN LIAO used the funds in the TD Bank checking account ending in -0641 to make a $1,000 earnest money payment on Madison, 571 Thurston Hill Road, on about April 8, 2022, and to issue a $74,420.13 bank check on about May 25, 2022, for the purchase of the property.

### 2. Norridgewock, 114 Upper Main Street, Real Estate Details

18.     The warranty deed recorded with the Somerset County Register of Deeds for Norridgewock, 114 Upper Main Street, shows that on November 29, 2023, the real property at such location was granted to JIAMIN LIAO. Norridgewock town tax records have not been updated to reflect JIAMIN LIAO's current ownership of the property.

19.     In connection with the investigation, business records were obtained from the local Maine real estate agency that represented the seller concerning the sale of

Norridgewock, 114 Upper Main Street. The records of the seller's agent show that JIAMIN LIAO used the TD Bank checking account ending in -0641 to make a $1,000 earnest money payment on Norridgewock, 114 Upper Main Street, on about September 19, 2023, and provided a screen shot of the same account to provide "proof of funds" to support the purchase of the property. A copy of the "HUD-1" Settlement Statement provided by the seller's agent shows that JIAMIN LIAO purchased Norridgewock, 114 Upper Main Street, for a contract price of $150,000, absent any mortgage loan financing. JIAMIN LIAO's signature is shown on the HUD-1 Settlement Statement dated on about November 29, 2023.

### 3.   Electrical Usage

20.     The DEA issued an administrative subpoena to Central Maine Power ("CMP") seeking electrical usage data for Madison, 571 Thurston Hill Road, and Norridgewock, 114 Upper Main Street. Records provided by CMP show that JIAMIN LIAO became the holder of the account for Madison, 571 Thurston Hill Road, in May 2022, and remained so through March 2024.

21.     The following CMP usage and billing data was shown for Madison, 571 Thurston Hill Road:

| Month & Year | Power Usage (kWh) |
| --- | --- |
| June 2022 | 111 |
| July 2022 | 159 |
| August 2022 | 246 |
| September 2022 | 163 |
| October 2022 | 308 |
| November 2022 | 1,656 |
| December 2022 | 6,410 |
| January 2023 | 12,970 |
| February 2023 | 11,044 |
| March 2023 | 12,737 |
| April 2023 | 18,546 |
| May 2023 | 15,273 |

| June 2023 | 14,839 |
|---|---|
| July 2023 | 16,386 |
| August 2023 | 14,393 |
| September 2023 | 14,488 |
| October 2023 | 15,510 |
| November 2023 | 14,323 |
| December 2023 | 17,270 |
| January 2024 | 16,311 |
| February 2024 | 15,509 |
| March 2024 | 14,927 |

22.     I know from my training and experience, as well as my discussions with other knowledgeable federal law enforcement agents, that large amounts of electrical power are needed in support of indoor marijuana cultivation, due to the use of artificial lighting, heat pumps, distribution fans, air conditioners and humidifiers. The electrical consumption for Madison, 571 Thurston Hill Road, as detailed above, was consistent with large-scale illegal marijuana cultivation, particularly from December 2022 onward. For comparison, according to the Energy Information Administration, the average U.S. household consumes about 10,500 kilowatthours of electricity per year (https://www.eia.gov/energyexplained/use-of-energy/electricity-use-in-homes.php), or roughly 875 kilowatthours per month.

23.     Electricity usage records provided by CMP show that JIAMIN LIAO became the holder of the account for Norridgewock, 114 Upper Main Street, in December 2023, and remained so through March 2024. The kilowatthour usage for Norridgewock, 114 Upper Main Street, showed normal usage. This is because, as explained below, JIAMIN LIAO used the premises of Norridgewock, 114 Upper Main Street, to unlawfully store marijuana that she cultivated at Madison, 571 Thurston Hill Road.

### C.      The SCSO Investigation

24.      In connection with the federal investigation, I have worked in collaboration with state and local law enforcement. Through my communications with state and local law enforcement, I learned that the SCSO was investigating illegal marijuana cultivation at Madison, 571 Thurston Hill Road, and Norridgewock, 114 Upper Main Street.

25.      The SCSO secured search warrants for both Madison, 571 Thurston Hill Road, and Norridgewock, 114 Upper Main Street. The search warrants encompassed information stored in cellular telephones and computer storage devices.

26.      DEA and HSI special agents participated in the execution of the search warrant by the SCSO on March 25, 2024, in a support capacity.

### 1.      Madison search warrant execution

27.      The search warrant for Madison, 571 Thurston Hill Road, was executed first.

28.      Inside the residence there were several rooms that were currently being utilized to grow marijuana. The residence also had several security cameras installed, on both the interior and exterior. In the master bedroom of the residence were six notebooks containing handwriting in Chinese, along with a black bag in which were located several SIM cards. Mail packages addressed to JIAMIN LIAO was also found at the residence.

29.      The basement had several rooms where walls had been built and reflective material was hung to aid in the marijuana cultivation process, with one of the rooms currently being used to grow marijuana.

30.     The entire garage area was divided into three rooms, each being utilized to grow marijuana.

31.     Approximately 551 marijuana plants were growing and flowering within these structures. Also found were chemicals (including Eagle 20 EW), used rubber gloves, and a vacuum sealer box. Samples of the marijuana were field tested and tested positive as marijuana.

### 2.      Norridgewock search warrant execution

32.     The search warrant for Norridgewock, 114 Upper Main Street, was executed later in the day on March 25, 2024, following the execution of the search warrant on Madison, 571 Thurston Hill Road.

33.     Upon entering the residence, JIAMIN LIAO was located in a first-floor bedroom, and was identified by reference to her possessing a New York State driver's license.

34.     During the search of the residence, SCSO personnel located and seized approximately thirty pounds of processed marijuana from a first-floor closet in the room where JIAMIN LIAO was found. The marijuana was packaged and vacuum-sealed in bags weighing approximately one pound each. Found in the same room were scissors, bearing a green residue that smelled of marijuana, apparently used for the cutting and trimming of the plants. A digital scale was found nearby. A vacuum sealer, plastic for the vacuum sealer, and a kitchen strainer with a green residue smelling of marijuana, were all found in a bag in the same room. A sample of the packaged marijuana was field tested and tested positive as marijuana. Located and seized from the room where

JIAMIN LIAO was found were a money counting machine, along with approximately $39,625 in United States Currency.[3]

35.     Also found were Bank of America checking account statements in JIAMIN LIAO's name; TD Bank checks for the checking account ending in -0641; and JIAMIN LIAO's U.S. Lawful Permanent Resident Card and her Chinese Passport

36.     Additionally, in a silver gray notebook found in the first-floor bedroom where JIAMIN LIAO was located, SCSO personnel discovered and seized thirty-eight Lyca Mobile SIM Cards. These were taped to four pages within the notebook, as shown by the below photographs I took at the DEA Portland Maine Resident Office:



---

[3] $32,200 in cash was found in a pink handbag in the first-floor bedroom in which JIAMIN LIAO was first identified; also found in the room was a manilla envelope with $7,005 in cash; $420 was found in a small purse, along with various credit and debit cards in JIAMIN LIAO's name.



37.    Each SIM card corresponded within the notebook to a handwritten

telephone number, detailed as follows (and as shown above):

    a.  631-691-8941 (Phone number associated)
        8919601000
        237934795

    b.  646-578-7870 (Phone number associated)
        8919601000
        252390022

    c.  631-691-8930 (Phone number associated)
        8919601000
        237934696

    d.  646-571-9804 (Phone number associated)
        8919601000
        222297380

    e.  646-515-5978 (Phone number associated)
        8919601000

222297778

f. 631-691-8982 (Phone number associated)
8919601000
237932930

g. 646-633-1093 (Phone number associated)
8919601000
222292019

h. 646-204-3484 (Phone number associated)
8919601000
237934951

i. 646-633-1421 (Phone number associated)
8919601000
237933375

j. 646-203-7270 (Phone number associated)
8919601000
237932914

k. 646-662-4832 (Phone number associated)
8919601000
237934415

l. 646-203-6556 (Phone number associated)
8919601000
237932922

m. 646-204-8538 (Phone number associated)
8919601000
237934944

n. 631-691-8967 (Phone number associated)
8919601000
237934407

o. 631-691-8959 (Phone number associated)
8919601000
237934662

p. 646-204-3406 (Phone number associated)

8919601000
237934001

q.  646-203-6007 (Phone number associated)
    8919601000
    237932906

r.  646-204-7606 (Phone number associated)
    8919601000
    237934555

s.  646-387-5963 (Phone number associated)
    8919601000
    243275431

t.  631-703-7573 (Phone number associated)
    8919601000
    222292894

u.  646-541-9676 (Phone number associated)
    8919601000
    222297760

v.  631-691-8923 (Phone number associated)
    8919601000
    237934704

w.  646-209-4958 (Phone number associated)
    8919601000
    237934266

x.  646-204-7038 (Phone number associated)
    8919601000
    237934605

y.  631-703-7612 (Phone number associated)
    8919601000
    222292035

z.  347-247-1241 (Phone number associated)
    8919601000
    237935016

aa. 929-402-5669 (Phone number associated)

8919601000
252390675

bb. 929-250-4338 (Phone number associated)
8919601000
230896405

cc. 631-640-2776 (Phone number associated)
8919601000
237935511

dd. 646-239-5714 (Phone number associated)
8919601000
237932955

ee. 646-239-7968 (Phone number associated)
8919601000
237868076

ff. 646-239-9499 (Phone number associated)
8919601000
237868225

gg. 646-726-1861 (Phone number associated)
8919601000
252390634

hh. 646-906-7919 (Phone number associated)
8919601000
252390915

ii. 646-361-8237 (Phone number associated)
8919601000
243039886

jj. 929-264-8391 (Phone number associated)
8919601000
243275423

kk. 646-906-7875 (Phone number associated)
8919601000
252390964

ll. 929-391-9113 (Phone number associated)

8919601000
252390659

38.    Also found were a black and silver thumb drive,



39.    A gold DTGE9 thumb drive,



40.    A white thumb drive,



41.    And a Sangsin Brake Hi-Q thumb drive:



42.    A 2020 Toyota RAV4 was located in the driveway of Norridgewock, 114 Upper Main Street, which was registered to JIAMIN LIAO. The vehicle was searched pursuant to the state search warrant. The interior trunk area of the vehicle was found to be lined with plastic and black trash bags, in a manner suggestive of transporting marijuana.

### D.    Interview of JIAMIN LIAO

43.    JIAMIN LIAO was detained by the SCSO and removed to a SCSO patrol vehicle parked in the driveway of Norridgewock, 114 Upper Main Street, for questioning. SCSO personnel conducted a post-*Miranda* interview of JIAMIN LIAO. I have listened to the audio recording of the interview prepared by the SCSO,[4] and provide the below details of the same, in sum and substance.:

    a.    When initially questioned about growing marijuana at Madison, 571 Thurston Hill Road, JIAMIN LIAO initially indicated that she did not understand, however, then indicated that the marijuana was for herself.

---

[4] The interview was conducted in English. On the basis of the interview, it is apparent to me that JIAMIN LIAO both speaks and understands English.

b. JIAMIN LIAO had recently purchased Norridgewock, 114 Upper Main Street, and was fixing it up to sell it.

c. When she was in Maine, she would stay at the Norridgewock property, rather than the Madison property.

d. JIAMIN LIAO admitted to having approximately 20 pounds of processed marijuana at Norridgewock, 114 Upper Main Street, and claimed that it was for herself. The marijuana she kept at Norridgewock, 114 Upper Main Street, was grown by her at Madison, 571 Thurston Hill Road. A friend transported the marijuana for her.

e. JIAMIN LIAO tended and harvested the marijuana plants at Madison, 571 Thurston Hill Road, packaged the processed marijuana in one-pound bags, and stored the product at Norridgewock, 114 Upper Main Street, in her closet.

f. JIAMIN LIAO had been engaging in the marijuana cultivation for approximately six months. She claimed not to be working with or for anyone else, however, stated that because she is busy, a friend sometimes transported the marijuana from Madison, 571 Thurston Hill Road, to Norridgewock, 114 Upper Main Street.

g. JIAMIN LIAO acknowledged having a mortgage on Madison, 571 Thurston Hill Road. She worked part-time at a restaurant in Boston. She received money from her family to purchase both properties.

h. JIAMIN LIAO claimed not to sell the marijuana, stating that she kept it at the house (Norridgewock, 114 Upper Main Street) because she liked the way it smelled.

i.   JIAMIN LIAO described the marijuana plants as "like my babies,"

stating that it made her happy when the plants grew.

44.    JIAMIN LIAO was arrested and charged with cultivating marijuana for more than 500 plants (Class B), and aggravated trafficking of marijuana (Class A) for possessing more than twenty pounds of processed marijuana. She made cash bail soon after.

\*   \*   \*   \*   \*

45.    Based on the foregoing facts, there exists probable cause to believe that evidence of violations of Title 21, United States Code, Sections 856 & 846 (Drug-Involved Premises; Conspiracy), Title 18, United States Code, Sections 1343 & 1349 (Wire Fraud; Conspiracy), and Title 18, United States Code, Sections 1956 & 1957 (Money Laundering) is contained within the STORAGE MEDIA.

46.    As detailed above, information contained in the STORAGE MEDIA may provide evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the Government to establish and prove each element or alternatively, to exclude the innocent from further suspicion.

47.    Based on the information above, the STORAGE MEDIA is likely to contain the types of material described above, including stored content and information concerning the illegal marijuana activity at Norridgewock, 114 Upper Main Street, and Madison, 571 Thurston Hill Road. In my training and experience, such information may constitute evidence of the crimes under investigation.

48.    As detailed above, the STORAGE MEDIA was recovered from an individual connected to suspected large-scale illegal marijuana grow operations in

Maine. JIAMIN LIAO has a direct ownership, financing, and control interest in such illegal grow operations.

49.     I know from my training and experience, as well as from information provided to me by other experienced federal and state drug investigators, that extensive marijuana cultivation operations are complex and often require oversight and labor to be provided by multiple involved individuals, rather than a single grower. Therefore, JIAMIN LIAO's grow operations likely required outside coordination and communication with other participants or co-conspirators. I believe that the STORAGE MEDIA will contain evidence concerning other participants or co-conspirators concerning the illegal grow operations, and that such evidence exists on all STORAGE MEDIA.

50.     Particular to the SIM cards, I also know from my training and experience, as well as from information provided to me by other experienced federal and state drug investigators, that cellular telephones are often used as PDAs, similar to a personal computer. Cell phones often utilize a subscription-based data plan, which enables the user to access the Internet and GPS/directional mapping functions. It is therefore likely that the SIM cards would have been used by cell phones having Internet and GPS functionality. Given this likely Internet and GPS access, I believe that the evidence of illegal activity will further be present on the SIM cards.

51.     Also, as addressed above, evidence acquired during the investigation shows banking activity at large financial institutions by JIAMIN LIAO. Illegal drug proceeds are often laundered using multiple financial institutions. Electronic records and ledgers showing such financing may be contained on the thumb drives. Relatedly, given the for-profit nature of illegal marijuana cultivation, and the likelihood that illicit

proceeds were generated from such activities, I believe that stored content and information associated with the STORAGE MEDIA relevant to the monetary proceeds of the marijuana enterprise may also be present and subject to search and seizure.

52.     In addition, JIAMIN LIAO—who apparently resides in New York—financed the Madison, 571 Thurston Hill Road, property through a loan granted by Hometown Equity Mortgage, LLC. The mortgage loan application documentation showed that JIAMIN LIAO specifically represented and agreed that "the property will not be used for any illegal or prohibited purpose or use." More generally, in my training and experience, an important consideration in the issuance of mortgage loans is whether or not the applicant will be using the collateral property for illegal activities. Accordingly, information contained within the STORAGE MEDIA may constitute evidence of wire fraud committed in connection with the acquisition of Madison, 571 Thurston Hill Road, and other properties.

53.     Finally, in my training and experience, the possession of multiple electronic devices, detailed ledgers, contacts lists, and numerous SIM cards and storage media at Norridgewock, 114 Upper Main Street, is consistent with JIAMIN LIAO's participation in illegal activity such as drug trafficking and money laundering, and strongly indicates that evidence of such crimes will be found on the STORAGE MEDIA. Illegal narcotics distributors routinely use multiple cell phones to conduct drug-related business, with the different phones being used for different purposes connected with their drug work. Moreover, based on my training and experience, individuals involved in the illicit drug trade often use multiple SIM cards in cell phones, in order to evade investigation and disguise their activities.

**<u>CONCLUSION</u>**

54.     Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the STORAGE MEDIA, consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

55.     Therefore, I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the STORAGE MEDIA, as described in **<u>Attachment A</u>**, to seek the items described in **<u>Attachment B</u>**.

56.     Because this warrant seeks only permission to examine items already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

57.     I am aware that the review and seizure of digital evidence may undergo a lengthy review and analysis. For this reason, the "return" inventory will contain a general description of data recovered from the STORAGE MEDIA. Unless otherwise ordered by the Court, the return will not include evidence later examined by an investigator or forensic analyst.

Kristopher Sullivan
DEA Special Agent

Sworn to telephonically and signed
electronically in accordance with the
requirements of Rule 4.1 of the Federal Rules
of Criminal Procedure

Date: May 30 2024

City and state: Bangor, ME

_Judge's signature_

John C Nivison U.S. Magistrate Judge

_Printed name and title_